UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALONZO BLEVINS,
    Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:14-cv-317

Bertelsman, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ and supplemental memorandum, and petitioner's reply. (Docs. 4, 9, 10, 11).

**I.    FACTUAL BACKGROUND**

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:

> **{¶7}** On July 3, 2009 at approximately 9:00 p.m., Deputy David Fairchild and Detective Matt Spencer with the Scioto County Sheriff's Office and Trooper Nick Lewis with the Ohio State Highway Patrol were patrolling U.S. 23 in Scioto County when they observed a vehicle with a cracked windshield. Fairchild initiated a traffic stop, and Spencer and Lewis assisted him. The vehicle contained six occupants. The driver, Jason Craft, and the front seat passenger, Jillian Newman, had outstanding warrants for their arrest. Craft's father owned the vehicle but was not present. The following people were seated in the back seat from left (i.e. behind the driver's seat) to right: Blevins, Beth Vest, Anthony Blevins ("Anthony"), and Billy Stapleton. Blevins also had an outstanding warrant out for his arrest. Law enforcement arrested Craft, Newman, and Blevins based on the warrants.
>
> **{¶8}** Law enforcement found the following items in the passenger compartment of the vehicle: one can of Preston starting fluid, four cans of Johnson starting fluid, crushed pseudoephedrine, uncrushed tablets containing pseudoephedrine, two four-packs of lithium batteries, two rolls of black electrical tape, one siphon pump, three copper fittings, and an empty box of CVS cold medicine (pseudoephedrine). They found the uncrushed tablets between the driver's seat and center console and the crushed pseudoephedrine "very well hidden" stuffed under the center console. They found the tape, batteries, and one can of Johnson starting fluid in a Walmart bag on

the floor behind the driver's seat. In addition, they found the empty CVS box on the "passenger rear floorboard" and "underneath some stuff." The copper fittings were on the floor behind the driver's seat. The siphon pump was found in a Big Lots bag, presumably in the back seat of the vehicle.

{¶9} Spencer and Detective Adam Giles of the Scioto County Sheriff's Office explained the role the items found in the vehicle play in the production of methamphetamine. Giles testified that pseudoephedrine is a "precursor chemical" found in common cold medicines, and it or ephedrine is needed to produce methamphetamine. Giles also testified that a solvent, like starting fluid is added to the crushed up cold pills to draw out the pseudoephedrine and lithium or sodium metal is also added to the mixture later. Spencer testified that the ether in starting fluid is a key ingredient in the manufacturing process. In addition, Giles testified that a siphon pump could be used in two steps of the manufacturing process—to either help extract the pseudoephedrine or to create a gas generator needed later in the process. Spencer testified that electrical tape is used to hold the siphon hose in place and that copper fittings can be used to seal off anhydrous tanks used in the manufacturing process.

{¶10} A CVS receipt in the vehicle showed a purchase of a CVS brand decongestant, i.e. a pseudoephedrine purchase, at 7:49 p.m. that day. CVS records revealed that Stapleton made that purchase. And Spencer testified that through his investigation, he learned that Anthony was with Stapleton at the time. Walmart records revealed that Craft, Stapleton, and Newman purchased drugs containing pseudoephedrine that day. Newman made her purchase at 7:54 p.m., Craft made his purchase at 7:57 p.m., and Stapleton made his purchase at 8:10 p.m. A Walmart receipt found in the vehicle revealed a cash purchase of various items at 8:15 p.m., including one can of starting fluid, batteries, two rolls of tape, and one container of tic tacs. According to Spencer, Blevins and Vest (his girlfriend) were depicted on Walmart surveillance footage of this transaction, and Vest appeared to pay for the items. Lisa Payton, a Walmart Asset Protection Coordinator, testified that the Universal Product Code for the starting fluid matched the code on the can of Preston starting fluid found in the vehicle. Spencer also testified that the Big Lots receipt from the vehicle indicated someone purchased a siphon pump at 8:47 p.m. To Spencer's knowledge Blevins did not make that purchase or go into Big Lots.

{¶11} Blevins had tic tacs and two syringes on his person when law enforcement arrested him. One syringe was still in a package, but the other had been opened and loaded with a substance. The Sheriff's Office did not test the substance. Instead, it destroyed the syringes according to an office policy.

{¶12} Spencer and Lewis testified that when they instructed Newman to exit the vehicle, she kept her legs together as she did so. Lewis testified that her actions made him believe she was trying to conceal something between her legs, and after she stood, he saw the corner of a clear plastic baggie on the seat, i.e. Newman had been sitting on it. Lewis testified that people who possess drugs commonly put their stash into a baggie, filter the drugs into one corner of the bag, cut that corner off, and twist the open part of the corner to secure the drugs inside. He testified that this particular

2

"corner piece" contained white residue. Michelle Anderson, a forensic scientist for the Ohio Bureau of Criminal Identification and Investigations identified the residue as a trace amount of methamphetamine.

**{¶13}** Lieutenant Edward Crispen, the post commander at the Ohio State Highway Patrol's Portsmouth post testified that sometime in August 2009, Blevins came to the post to complain about Lewis' conduct during a different traffic stop. Blevins was angry and complained that Lewis violated his constitutional rights on multiple occasions. According to Crispen, Blevins felt he was "getting stopped more than he should have been stopped." In addition, Blevins told Crispen that he was "just a small time meth dealer user," and Lewis should focus on more serious criminals. Crispen advised Blevins that what he was doing was still illegal. Blevins said, "I realize that but it[']s still small time stuff."

(Doc. 8, Ex. 9, PageID 143–46).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On August 10, 2009, the Scioto County, Ohio grand jury returned a two-count indictment charging petitioner with illegal possession of chemicals for the manufacture of drugs and possession of drugs/methamphetamine. (Doc. 8, Ex. 1). Petitioner entered a plea of not guilty to all counts charged in the indictment. (Doc. 8, Ex. 2).

Following a jury trial, petitioner was found guilty of both charges included in the indictment. (Doc. 8, Ex. 4). On April 5, 2010, petitioner was sentenced to a total aggregate prison sentence of six years in the Ohio Department of Rehabilitation and Corrections. (Doc. 8, Ex. 5).

### Direct Appeal

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 8, Ex. 6). Petitioner raised the following three assignments of error in his appellate brief:

1. The Defendant–Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution as a result of Trial Counsel's failure to move for a Criminal Rule 29 motion of acquittal at the close of the Plaintiff–Appellee's case in chief.

3

2. The trial court abused its discretion and erred to the prejudice of the Defendant-Appellant by allowing prejudicial testimony in violation of Evid.R. 403(A).

3. The verdict and conviction is against the manifest weight of the evidence presented at trial.

(Doc. 8, Ex. 7). On April 18, 2011, the Ohio Court of Appeals issued a decision and judgment entry overruling petitioner's first and second assignments of error. The Ohio appeals court sustained in part and overruled in part petitioner's third assignment of error, finding that petitioner's conviction for possession of methamphetamine was against the manifest weight of the evidence. The court affirmed petitioner's conviction for illegal possession of chemicals for the manufacture of drugs. (Doc. 8, Ex. 9).

### Ohio Supreme Court

Petitioner, through counsel, filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court. (Doc. 8, Ex. 10, 11). The Ohio Supreme Court granted the motion for delayed appeal and petitioner submitted a memorandum in support of jurisdiction raising the following issues:

> The trial court abused its discretion and erred to the prejudice of the Defendant-Appellant by allowing prejudicial testimony in violation of Evid.R. 403(A).
>
> Furthermore, the court of appeals found there was insufficient evidence to convict the Defendant-Appellant of Possession of Drugs yet allowed the conviction to stand for the illegal possession of chemicals for the manufacture of drugs, even though the conviction was against the manifest weight of the evidence and contrary to the Fourth Court of Appeals holding in *State v. Kingsland* (2008) 177 Ohio App. 3d 655.

(Doc. 8, Ex. 13). On November 30, 2011, the Ohio Supreme Court denied leave to appeal. (Doc. 8, Ex. 14).

### Application to Reopen

Meanwhile, on July 13, 2011, petitioner filed a pro se application to reopen his appeal

4

pursuant to Ohio App. R. 26(B). (Doc. 8, Ex. 23, 24). Therein, petitioner argued that his appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1. Appellate Counsel failed to file error on the trial court for prejudicing Mr. Blevin's substantial rights by admitting unduly prejudicial testimony, (About other acts) or which were not related to the case at bar. Only probative value was to establish Mr. Blevin's bad character and conduct… in violation of Mr. Blevin's rights to due process under the 5th and 14th amend. Of the U.S. Const. And Sect. 16 Article 1, of the Ohio Const.

2. Appella[te] Counsel failed to file Ineffective Assistance of Trial Counsel for failing to move the trial court to waive, (statute 2949.092) the imposition of court costs and the mandatory minimum fine on behalf of an indigent defendant. In violation of Mr. Blevin's rights to due process under the 5th and 14th amend. Of the U.S. Const. And Sect. 16 Article 1, of the Ohio Const.

3. Appella[te] Counsel failed to file error on the trial court when it abused its discretion in refusing his motion for a mistrial based on prosecutorial misconduct. Violation under the 5th and 14th amend. Of the U.S. Const. And Sect. 16 Article 1, of the Ohio Const.

4. Appella[te] Counsel failed to error the trial court for abuse of discretion for allowing trial counsel to proceed to trial without discovery (exculpatory evidence), Crim R.16 and no knowledge of the case at bar. Violation under the 5th and 14th amend. Of the U.S. Const. And Sect. 16 Article 1, of the Ohio Const.

(Doc. 8, Ex. 23). On October 14, 2011, the Ohio Court of Appeals denied petitioner's application. (Doc. 8, Ex. 26).

On October 28, 2013, more than two years later, petitioner filed a pro se motion requesting that the Ohio Court of Appeals vacate its judgment denying his 26(B) application and re-enter the judgment to allow him to perfect an appeal to the Ohio Supreme Court. (Doc. 8, Ex. 26). Petitioner argued that he was not notified of the court's decision until September 2013. On December 11, 2013, the Ohio Court of Appeals issued an entry finding that the clerk of courts erroneously mailed a copy of the October 2011 judgment to petitioner's former appellate counsel

even though petitioner filed a pro se 26(B) application. The appeals court ordered the clerk of courts to serve petitioner with a copy of the decision and judgment denying the application to reopen.

On January 27, 2014, petitioner filed a notice of appeal to the Ohio Supreme Court from the denial of his application to reopen. (Doc. 8, Ex. 28). In his memorandum in support of jurisdiction, petitioner raised the following six propositions of law:

1. Where appellate counsel fails to raise significant and obvious constitutional issues on appeal with a reasonable probability of success, in favor of weaker arguments the Sixth and Fourteenth amendments have been violated.

2. Where the State informs the jury about prior bad acts of accused, a mistrial is warranted. Where appellate counsel fails to file error on the trial court for admitting such testimony he is ineffective.

3. Where appellate counsel fails to file ineffective trial counsel for counsels failure to move court to waive imposition of court costs and fines of indigent defendant he is ineffective.

4. Where appellate counsel fails to raise abuse of discretion on the trial court for allowing trial counsel, to proceed to trial without proper discovery (including Brady material), he is ineffective.

5. Where appellate counsel failed to file error on the trial court for abuse of discretion in refusing motion for mistrial based on prosecutorial misconduct he is ineffective.

6. Where trial court erred in admitting evidence over objection based on the State's lack of a chain of custody, the evidence created a false nexus and the case was not sustained by the greater weight of the evidence and was contrary to law

(Doc. 8, Ex. 29). The Ohio Supreme Court declined to accept jurisdiction of the appeal on May 14, 2014. (Doc. 8, Ex. 30).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on April 14, 2014. (Doc. 4). Petitioner raises two grounds for relief in the petition:

> **GROUND ONE**: Conviction against sufficiency of the evidence for possession of chemicals charge. Based upon the fact that the Court of Appeals found there was insufficient evidence to convict on possession of drugs, the court could not have allowed the conviction for illegal possession of chemicals to manufacture to stand.
>
> **GROUND TWO**: Violation of evidence rule 403 wherein court allowed testimonial evidence of Det. Crispin. Unfair prejudice.

(Doc. 4).

Respondent has filed a return of writ in opposition to the petition. (Doc. 13). Respondent contends that petitioner's grounds are not cognizable or without merit.

### III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when

7

'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct.

8

at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44–45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

9

the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Ground One is without merit.

In Ground One, petitioner contends that his conviction for illegal possession of chemicals for the manufacture of drugs was not supported by sufficient evidence.

On direct appeal, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignments of error challenging the sufficiency and manifest weight of the evidence. The court rejected both claims, reasoning in pertinent part as follows:

> B. Possession of Chemicals for the Manufacture of Methamphetamine
>
> {¶22} The jury also found Blevins guilty of possession of chemicals for the manufacture of a controlled substance, i.e. methamphetamine, in violation of R.C. 2925.041(A), which states: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." Methamphetamine is a Schedule II controlled substance. R.C. 3719.41, Schedule II(C)(2).
>
> {¶23} Blevins apparently concedes that the chemicals found in the vehicle—pseudoephedrine, ether in the starting fluid, and lithium in the batteries—may be used to manufacture methamphetamine. He focuses instead, on the argument that the State failed to put forth evidence that he possessed these chemicals or did so with the intent to manufacture methamphetamine. We disagree.
>
> {¶24} The State presented evidence from which a jury could conclude that Blevins possessed chemicals used in the manufacture of methamphetamine with intent to make the drug. Although he did not pay for the starting fluid and batteries, Blevins was present when Vest paid for the items at Walmart, had actual possession of one other item from this transaction during his arrest (tic tacs), and had the starting fluid and batteries sitting on the floor by him in the backseat. Blevins also sat within reach of the crushed and uncrushed pseudoephedrine in the vehicle and within reach of non-chemical items that play a role in the manufacture of methamphetamine, such as the electrical tape and copper fittings.
>
> {¶25} The State's evidence of the timeline of events suggests that Blevins participated in a carefully orchestrated plan with the other occupants of the vehicle to

acquire these items to make methamphetamine and to avoid suspicion by dividing up the purchases. Between 7:49 p.m. and 8:10 p.m., three of the vehicle occupants purchased medicine containing pseudoephedrine and a fourth occupant was present during at least one of those purchases. Three of the four purchases were made at Walmart between 7:54 p.m. and 8:10 p.m. Blevins and Vest went through the checkout line at the same Walmart store at 8:15 p.m. to purchase the starting fluid, batteries, and tape. The jury could infer that once the Walmart purchases (which occurred within minutes of each other) were finished at 8:15 p.m., the group of six converged at Craft's father's vehicle, went to Big Lots so someone could make the 8:47 p.m. siphon pump purchase, and was stopped minutes later by law enforcement.

**{¶26}** The evidence reasonably supports the conclusion that Blevins had constructive possession of chemicals used in the manufacture of methamphetamine—lithium (in the batteries), ether (in the starting fluid), and pseudoephedrine—and that he intended to manufacture methamphetamine along with the other vehicle occupants. The jury chose to believe the State's version of events, and we will not substitute our judgment for that of the jury under these circumstances. After reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Blevins guilty of possession of chemicals for the manufacture of a controlled substance.

\* \* \*

**{¶29}** . . . Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, Ross App. No. 10CA3153, 2010–Ohio–6597, at ¶ 34, citing *State v. Pollitt*, Scioto App. No. 08CA3263, 2010–Ohio–2556, at ¶ 14. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*, quoting *State v. Lombardi*, Summit App. No. 22435, 2005–Ohio–4942, at ¶ 9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669.

**{¶30}** In resolving Blevins' third assignment of error, we already determined that his conviction for possession of chemicals for the manufacture of methamphetamine was not against the manifest weight of the evidence. . . .

(Doc. 8, Ex. 9).

After review of the record in this case, the undersigned finds that petitioner is not entitled to habeas relief based upon his sufficiency of evidence claim. The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As

11

the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363–64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at

796–97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. In order to carry its burden of proof on petitioner's conviction, the prosecution was required to prove that petitioner knowingly assembled or possessed one or more chemicals that may be used to manufacture methamphetamine. *See* Ohio Rev. Code § 2925.041(A).

The prosecution's theory of the case was that petitioner, along with the other five passengers of the car, were actively gathering ingredients to manufacture methamphetamine

13

when they were pulled over. (*See* Doc. 12, Transcript at PageID 603). At trial, Detective Spencer, Deputy Fairchild, and Ohio State Highway Patrol Officer Lewis testified that they initially pulled over the vehicle because it had a cracked windshield. (*Id.* at 444, 578). The vehicle contained six passengers in total, two in the front seat and four passengers behind them. After determining that the driver, the front-seat-passenger Jillian Newman, and petitioner—who was seated behind the driver's seat—all had outstanding warrants, the deputies removed these individuals from the vehicle. (*Id.* at 444–46). The officers recovered a pack of tic tacs and two syringes from petitioner, one loaded and one empty. (*Id.* at 447). Fairchild testified that pursuant to the Sheriff's Office policy, the syringes were destroyed and the contents were never tested. (*Id.* at 449).

Deputy Spencer and Officer Lewis testified that when Jillian Newman, the front-seat passenger, was removed from the vehicle she kept her legs closed together in an effort to conceal a clear plastic baggie. (*Id.* at 456–57, 580–81). The bag was recovered and later tested positive for narcotics. (*Id.* at 458). The officers additionally recovered a syringe from the front passenger's side, which was also destroyed. (*Id.* at 458–59). A search of the vehicle revealed five cans of starting fluid, crushed and uncrushed pseudoephedrine, lithium batteries, electrical tape, a siphon hose, copper fittings, a batter, and flashlights. (*Id.* at 460, 584–85). The prosecution offered testimony that these items can be used to produce methamphetamine. (*Id.* at 544–48, 552).

According to evidence presented at trial, many of these items were purchased by the occupants of the car in the hour before the traffic stop—on July 3, 2009, from Big Lots at 8:47 (siphon pump), 7:49 CVS (pseudoephedrine), and 8:15 Walmart (pseudoephedrine, starter fluid, batteries, and tape). (*Id.* at 465–68). The prosecution presented surveillance video of petitioner

and his girlfriend, Beth Vest, at Walmart at 8:14 purchasing the Preston starter fluid, batteries, tic tacs, and other items. (*Id.* at 480, 490, 528). Stapleton purchased pseudoephedrine from CVS at 7:49 p.m. (*Id*. at 508). Newman, Stapleton, and Craft all purchased pseudoephedrine from Walmart at 7:54, 7:57, and 8:10 p.m., respectively. (*Id.* at 518–21).

When viewing all of the evidence in the light most favorable to the prosecution, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction. Although petitioner contends that the state failed to prove that he possessed the items in the car, the Ohio Court of Appeals reasonably determined that petitioner was in constructive possession of chemicals and other items used in the manufacture of methamphetamine. "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." *State v. Gragg*, 878 N.E. 2d 55, 61 (Ohio App. 12 Dist. 2007) (citing *State v. Hankerson* 434 N.E.2d 1362 (1982)). As noted by the Ohio appeals court, in this case the state offered evidence that petitioner was present during the purchase of the starter fluid and batteries, and was seated within reach of the pseudoephedrine, electrical tape, and copper fittings. Furthermore, the timeline presented by the state would enable a reasonable juror to conclude that petitioner participated in an orchestrated plan to obtain the items seized in the car in order to produce methamphetamine. The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

**B. Ground Two is not cognizable**

In Ground Two, petitioner claims that the trial court violated Ohio Rule of Evidence 403 when it admitted testimonial evidence from Detective Crispin. (Doc. 4, PageID 55).

Petitioner raised this alleged error on direct appeal. The Ohio Court of Appeals overruled the assignment of error, reasoning as follows:

> {¶ 31} In his second assignment of error, Blevins contends that the trial court erred under Evid. R. 403(A) when it permitted Crispen to testify about a statement Blevins allegedly made to him. Blevins complains that Crispen testified that he told Crispen that he "cooked meth." However, from our review of the transcript, Crispen actually testified that Blevins stated that he was "a small time meth dealer user." Evid. R. 403(A) prohibits the introduction of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice * * *." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence ." Evid. R. 401. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[.]" *State v. Haines,* 112 Ohio St.3d 393, 2006–Ohio–6711, 860 N.E.2d 91, at ¶ 50. Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling on the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (per curiam). The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
>
> {¶ 32} Blevins contends that the probative value of Crispen's testimony was substantially outweighed by the danger of unfair prejudice. However, "[o]nly in rare cases are an accused's own actions or language unfairly prejudicial." *State v. Lee,* Franklin App. No. 06AP226, 2007–Ohio–1594, at ¶ 7, citing *State v. Bailey,* Franklin App. No. 04AP–553, 2005–Ohio–4068, at ¶ 11. Clearly Blevins' alleged statement was relevant to establishing his guilt. Blevins' status as a user and dealer of methamphetamine would make it more probable that he understood the ingredients and process for the manufacture of the drug and in fact intended to manufacture the drug to both sell and use it.
>
> {¶ 33} Blevins primarily complains that his alleged statement was "prejudicial" because Crispen's testimony lacked credibility. Specifically, he complains that Crispen could not recall exactly when Blevins made the statement and did not follow up on the statement even though Blevins had presumably admitted to being a criminal. Blevins also complains that the statement was not explicitly related to the traffic stop in this case. However, Crispen's testimony was not inherently unreliable. The jury was capable of determining what weight, if any, Blevins' alleged statement deserved in light of the other evidence in the case. Admission of

16

>   the testimony, harmful as it may have been to Blevins' case, was not unfairly prejudicial and was not a violation of Evid. R. 403(A). We overrule Blevins' second assignment of error.

(Doc. 8, Ex. 7, PageID 154–55).

Petitioner has failed to raise a cognizable claim in Ground Two of the petition. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67–68, (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). In this case, petitioner challenged the trial court's ruling on direct appeal and before the Ohio Supreme Court according to the Ohio Rules of Evidence and petitioner has not argued that the alleged error resulted in a constitutional violation of any kind in the instant petition or in reply to the return of writ. (*See* Doc. 3, 11).

Accordingly, petitioner is not entitled to habeas relief based on Ground Two of the petition.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief. Having found that Ground One of the petition is without merit and Ground Two is not cognizable, the petition should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a

"viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

          *s/ Stephanie K. Bowman*
          Stephanie K. Bowman
          United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALONZO BLEVINS,   Case No. 1:14-cv-317
    Petitioner,

                                      Bertelsman, J.
vs.   Bowman, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).